## Follmer's Estate.

*Executors and administrators—Insanity of wife named as executrix—Letters c. t. a.—Revocation of letters c. t. a.—Intervention of creditors—Parties.*

Where letters of administration c. t. a. are granted because the wife of testator, named as executrix, was at the time of his death an inmate of an insane asylum, and three months thereafter the widow, on being released from the asylum, petitions for a revocation of the letters c. t. a., creditors of the testator to a large amount, alleging that the estate in insolvent, will be permitted to intervene as parties in interest to show that the letters of administration c. t. a. should not be revoked.

Petition of creditors to intervene on an application to revoke letters of administration c. t. a. O. C. Union Co., May T., 1924, No. 5.

P. B. Linn, Ralph L. Belford, C. C. Lesher, H. M. Showalter and Cloyd Steininger, for petitioners.

C. M. Clement, for respondent.

POTTER, P. J., Aug. 9, 1924.—Col. William R. Follmer, who was an active practicing attorney of the Union County Bar, died Nov. 13, 1923, testate, leaving his last will and testament, wherein he appointed his wife, Eudora H. Follmer, as his executrix.

For reasons which we do not know, Mrs. Eudora H. Follmer became mentally deranged, was sent to the Geisinger Hospital at Danville, Pennsylvania, for treatment, was there a short time, when, by the authorities of that hospital, she was committed to the State Hospital for the Insane at Danville, Pennsylvania, for further treatment, such as her condition warranted, on Nov. 2, 1923. On Jan. 15, 1924, she was furloughed from that institution, and was, on March 20, 1924, finally discharged. She was an inmate of this institution at the time of her husband's death and burial, not having been discharged from that institution till about four months thereafter.

From information produced to us, we are led to believe that Col. William R. Follmer died insolvent, or nearly so. His creditors, being desirous that steps be taken looking towards the settlement of his estate, and knowing that his said wife, named in his will as his executrix, was an inmate of the said

### Follmer's Estate.

hospital for the insane, requested the Register of Wills of Union County to appoint Mrs. Mary W. Bennett as administratrix *c. t. a.* of his estate, she having been his private secretary, clerk and stenographer for about eighteen years, and being in confidential relation with all his business affairs.

In accordance with this request, letters of administration *c. t. a.* were in due form of law issued to the said Mary W. Bennett on Dec. 19, 1923, by virtue of which she entered upon her fiduciary duties.

On March 20, 1924, Eudora H. Follmer was discharged from the State Hospital for the Insane, and on May 19, 1924, she presented her petition to this court, asking that a citation issue requiring the said Mary W. Bennett to show cause why the said letters of administration issued to her should not be revoked and letters testamentary be granted to the petitioner, upon which the citation was awarded.

On May 24, 1924, the petition of creditors of the said decedent to the amount of $30,000 was presented, stating that revocation of the letters of administration to Mary W. Bennett would be contrary to the best interests of the estate and of the creditors, and asking that they be permitted to intervene, to the end that they might show cause to the court why the letters of administration issued to the said Mary W. Bennett should not be vacated and why letters testamentary should not be granted to Eudora H. Follmer, upon which a citation was awarded, which we now have before us for disposition.

There can be no doubt but that these creditors are parties very much interested in this estate, and especially so if the estate is insolvent, the assertion of which was made in open court upon the argument of this citation, but proof of which has not yet been furnished us.

These creditors appear to be very much in earnest in their contention, but just on what grounds we do not yet know. We feel, however, that being interested to the amount of $30,000, which is no mean sum of money, they should be given an opportunity to say why, in their judgment, the present administratrix should settle up this estate, and why the wife of the decedent should not. We want all the information on this matter we can get. We feel as though there is some hidden current of objections to a change of administration about which we do not know and about which we desire to be informed, and, to this end, we have decided to permit the creditors named in the petition for intervention to become parties to this proceeding, and to file their respective answers, stating in full their objections to the proposed change of administration.

We cannot but say that intervention is not a matter of right, but rests in the sound discretion of the court. We think it should be permitted when it will shed any light on a legal controversy and where interests of third persons are deeply involved, and to that end, and that only, are we permitting it in this instance. It is for the information of the court. We do not see how it can do any harm, and it may do much good.

Some time was taken at the argument of this matter, as well as in the preparation of briefs, as to the revocation of letters of administration *c. t. a.*, and as to the granting of letters testamentary in this case. This question is not before us now, and we think should not come before us except on appeal from the action of the register in this behalf, which officer has original jurisdiction.

And now, to wit, Aug. 9, 1924, for the reasons herein stated, the citation is made absolute and the petitioning creditors are permitted to intervene and become parties to these proceedings, they to file their respective answers within ten days from this date.

From Charles P. Ulrich, Selinsgrove, Pa.